Date signed December 11, 2013



_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Steven Kenneth Reed | * | Case No. 12-21819-RAG |
| | | Chapter 7 |
| Defendant | * | |
| * * * * * * * | | |
| Deborah A. Reed | * | |
| Plaintiff | * | |
| vs. | * | Adversary No. 12-00629 |
| Steven Kenneth Reed | * | |
| Defendant | * | |
| * * * * * * * * * * * * | | |

**MEMORANDUM OPINION IN SUPPORT OF
ORDER ENTERING SUMMARY JUDGMENT
EXCEPTING DEBT FROM DISCHARGE**

### I.    Preliminary Statement

This dispute raises the question of the extent to which a fact issue can be deemed "actually litigated" and thus binding in subsequent litigation when a party's investment in the former litigation drifts from participatory to unresponsive. Before this bankruptcy case was

1

filed, the Plaintiff, Deborah A. Reed, the Debtor's former wife, sought to enforce her rights arising from the agreement between she and Mr. Reed that outlined how their marriage would be wound up.  Her enforcement came in the form of a cross-claim for indemnification prosecuted in the Circuit Court for Anne Arundel County that ultimately prevailed through a summary judgment motion that Mr. Reed was served with but did not contest.  Now Ms. Reed seeks to have the resulting debt excepted from Mr. Reed's discharge through a second summary judgment motion made pursuant to 11 U.S.C. §523(a)(15).[1]  Her position appears to present a pristine case of issue preclusion in the context of dischargeability: while the state court could not have determined her exception to discharge cause of action on its merits, every material fact decided in the state court neatly supports Ms. Reed's assertion that the resulting debt should not be discharged. Mr. Reed's only potentially meritorious objection is the assertion that because he did not contest the state court summary judgment motion, and therefore was in 'default', the factual questions presented could not have been "actually litigated".  The Court concludes that well-reasoned case law, and the history of this dispute, requires a finding that the essential fact issues were actually litigated.  As the litigated (and other undisputed) facts thoroughly satisfy Section 523(a)(15)'s criteria, summary judgment shall be granted and the debt in favor of Ms. Reed shall be excepted from Mr. Reed's discharge.

## II.     Undisputed Facts

The undisputed facts are gleaned from (a) the Declaration of Plaintiff-Creditor Deborah A. Reed (Declaration), (b) the certified true copies of the papers filed in the case entitled *Binner, et al. vs. Reed, et al., Case No. 02-C-10-152174, Circuit Court for Anne Arundel County* (State Court Case) submitted in support of the Plaintiff's Motion for Summary Judgment (Summary

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code.

Judgment Motion) (Dkt. No. 6), and (c) the certified true copies of additional papers filed in the State Court case and provided by Plaintiff as exhibits to the Plaintiff-Creditor's Supplement to Motion for Summary Judgment (Dkt. No. 33) filed in response to the Court's *Sua Sponte* Order for Supplementation of Plaintiff's Motion for Summary Judgment (Dkt No. 32).[2]  Ms. Reed's Declaration provides a concise summary of the dispute's fundamental context, if not its detail.

> I [Ms. Reed] was previously married to Mr. Steven K. Reed from August 14, 1982 until September 2007.
>
> During our marriage, Mr. Reed and I held as Tenants in the Entirety, in fee simple, the improved property known as 8280 Patapsco Avenue, Pasadena, Maryland, 21122….
>
> The sale and disposition of the Property was required under the Marital Settlement Agreement entered into by Mr. Reed and myself on June 4th, 2007.
>
> On or about May 18, 2007, Mr. Reed and I entered into a contract of sale with Robert Binner and Madelaine Binner…for the sale of the Property. The closing was subsequently held on or about July 6, 2007.

Pl.'s Mot. Summ. J., Ex. A.

The Marital Settlement Agreement (Agreement) is attached to the Summary Judgment Motion as Exhibit "C". In relevant part, the Agreement states as follows with respect to 8280 Patapsco Avenue, Pasadena, Maryland, 21122 (Property):

> The Home is lien free. However, according to representations made by Husband, there are debts associated with the construction or improvement of the said property that he claims are now approximately Two Hundred Thousand Dollars ($200,000). …if

---

[2] Properly certified, or 'true', copies of records from another court are deemed self-authenticating and admissible per Fed. R. Evid. 902(4). In the Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Defendant's Opposition) (Dkt. No. 8), it is asserted that "no facts" sufficient to secure summary judgment were set forth in the Summary Judgment Motion. Defendant's Opposition also attacks the quality of Plaintiff's Declaration and generally contends that none of the papers filed with the Summary Judgment Motion establish "sufficient undisputed facts" to show that the Plaintiff has a right to recover "expenses incurred before the property was sold and settled." The merit of that contention will be discussed further along, but suffice to say here that the Defendant submitted no evidence to either contradict the authenticity or admissibility of Plaintiff's documents or to create a dispute of material fact, genuine or otherwise.  Plaintiff's submissions have therefore been accepted as material, admissible and undisputed.

3

> there are debts and obligations associated with the construction or improvement of this property that are in joint names or for which Wife is, in any manner responsible or may be in any manner responsible, Husband agrees to pay all such debts and to indemnify and hold Wife harmless as to said debts and obligations.
>
> \*          \*          \*
>
> Until said property is sold and settled, Husband shall be solely responsible for all expenses associated with either the ownership or occupancy of the said property. He shall also be solely responsible for all costs and expenses associated with maintaining and/or improving the said property so that it can be sold and, upon the signing of this Agreement, any legal or financial responsibility that Wife may have had with regard to any monies that are or may be due as a result of the ownership of the property shall be assumed by Husband. Husband shall indemnify and hold Wife harmless as to all such legal and financial responsibilities.

Agreement, ¶8.

Ms. Reed commenced the parties' divorce proceeding on September 7, 2006 and almost a year later, on September 6, 2007, the Agreement was incorporated (but not merged) into the Order granting a Judgment of Absolute Divorce by the Circuit Court for Anne Arundel County. Pl. Mot. Summ. J., Ex. D.  Soon after the Agreement's execution, the Property was sold to the Binners.  However, on May 14, 2010, the Binners commenced the State Court Case.  Their complaint (Binner Complaint) alleged a variety of claims for damages against Ms. Reed, the Debtor and several other defendants, all arising out of the pre-settlement condition of the Property and the obligations of each Defendant as either sellers or facilitators.  Pl. Mot. Summ. J., Ex. E.  Ms. Reed and the Debtor were each served with the Binner Complaint and they filed separate responses.  Hence the Debtor was not in default and was joined as a party to the State Court Case.  On August 16, 2010, Ms. Reed moved to formally enforce her rights under the Agreement by filing Defendant, Deborah A. Reed's, Cross-Claim Against Defendant, Steven K. Reed (Cross-Claim). The Cross-Claim provided in relevant part that:

4

> Steven K. Reed and Deborah A. Reed are Defendants in the above action and have submitted themselves to the jurisdiction of this court.
>
> Defendant, Deborah A. Reed, incorporates by reference all allegations contained in Paragraphs 1 through 57 of Plaintiffs' Complaint for the sole purpose of establishing jurisdiction of this Court over the Defendant, Steven K. Reed.
>
> Plaintiffs' Complaint alleges that the Defendant, Deborah A. Reed, breached a certain contract between the Plaintiffs and Steven K. Reed and Deborah A. Reed…, failed to disclose or concealed certain facts relating to obtaining permits, certificates of occupancy, the condition of the septic system…, and negligently misrepresented the securing of permits and the condition of the septic system….
>
> \*            \*            \*
>
> In the event that Plaintiffs obtain a judgment for monetary damages with respect to the allegations asserted in…the Complaint against the Defendant [Debtor] and Cross-Plaintiff, Deborah A. Reed, any such damage award would require the Cross-Defendant, Steven K. Reed, to indemnify the Cross-Plaintiff. Deborah A. Reed, pursuant to the terms of the Settlement Agreement.

Pl.'s Mot. Summ. J., Ex. G.

Debtor did not file a timely answer to the Cross-Claim and an Order of Default was entered on September 9, 2010. Newly motivated, he then filed a Request to Vacate Default (Request) on September 28, 2010. While the Request was pending, a settlement conference (Conference) was held in Baltimore on December 9, 2010 and both Ms. Reed and the Debtor were in attendance.[3] Ms. Reed agreed to pay the Binners $28,000 on her own behalf in settlement of their claims.

After the Conference, on December 16, 2010, the Request was granted and the Order of Default was vacated. Supplement to Pl.'s Mot. Summ. J., Ex. 2. On December 28, 2010, the

---

[3] Ms. Reed's Motion for Summary Judgment (State Court SJ Motion) (Pl.'s Mot. Summ. J., Ex. I) filed in the State Court Case, indicates that the Debtor attended the Conference and the Debtor does not deny that he was there.

unrepresented Debtor filed his Answer to the Cross-Claim (Answer).  Supplement to Pl.'s Mot. Summ. J., Ex. 3.  In pertinent part, he wrote:

> In the claim filed by Deborah A. Reed, point 6 quotes paragraph 8 of the Settlement Agreement between Steven K. Reed and Deborah A. Reed, however, the first line was omitted. The paragraph reads "Until the said property is sold and settled", husband shall be responsible. The [Property] was sold and settled long before this case was filed by the Binners….Steven K. Reed did in fact meet his responsibilities stated in the attached documents and did not breach any part of the Settlement Agreement….Therefore, Deborah A. Reed should be responsible for her own legal fees and any agreement her Attorney agreed to on her behalf, concerning a settlement with the Binners.

Id.[4]

On Feb. 15, 2011 the Binners filed Stipulations for Dismissal with Prejudice.[5]  Pl.'s Mot. Summ. J., Ex. F, 15. The state court's acknowledgement of the same states in part, **"The case remains open as to the cross-claim maintained by Deborah Reed against Steven Reed."** (bold in original). Pl.'s Mot. Summ. J., Ex. H.  Because her claim was unresolved, Ms. Reed filed the State Court SJ Motion on March 3, 2011.  In it, she sought indemnification from the Debtor for her $28,000 settlement payment to the Binners plus $21,352.54 that she paid for attorney's fees and costs incurred in defending the Binner Complaint.  The total judgment sought by Ms. Reed through the Cross-Claim was therefore $49,352.54 plus any additional, reasonable, attorney's fees.  Notwithstanding the vacatur of the Order of Default, and the defense he asserted in his Answer, the Debtor did not respond to the State Court SJ Motion.  An Order granting the

---

[4] The Debtor raises precisely the same argument in this case. The Answer was not filed with the Plaintiff's original submissions but the Court decided it was necessary to review it to enable an examination of the prior record with "particular care". *Combs v Richardson*, 838 F.2d 112, 113 (4th Cir. 1988).

[5] It appears from the State Court SJ Motion that the Debtor is the only State Court Case defendant who did not contribute to the settlement.

6

State Court SJ Motion (Judgment Order) was entered on April 28, 2011.[6] Pl.'s Mot. Summ. J., Ex. J.  As with the State Court SJ Motion, the Judgment Order was never contested by the Debtor and eventually a Notice of Recorded Judgment (Recorded Judgment) that, among other things, indicated the final judgment's full amount – $49,352.54, plus $6,500 in additional attorney's fees for a total of $55,852.54 – was entered on June 17, 2011. Pl.'s Mot. Summ. J., Ex. L.

### III.  Procedural History in this Court

On June 25, 2012, the Debtor filed his Voluntary Petition. On September 21, 2012, Ms. Reed filed a Complaint for Determination of Dischargeability Pursuant to Section 523 of the Bankruptcy Code (Dischargeability Complaint) and this Adversary Proceeding began. The Dischargeability Complaint seeks to except the Recorded Judgment from the Debtor's discharge on the basis of Section 523(a)(15).  On October 9, 2012, Plaintiff filed the Summary Judgment Motion.  On October 22, 2012, the Debtor filed a Motion for (sic) to Dismiss with Prejudice (Motion to Dismiss) (Dkt. No. 7).  Responses, oppositions and supplemental papers followed.  A hearing was held on June 4, 2006 at which time the Court indicated that an oral ruling would be given on June 21, 2013.  Upon reflection, the Oversigned decided to prepare this Opinion.[7]

### IV.  Jurisdiction and Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 157, and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core

---

[6] The Judgment Order mistakenly awarded Ms. Reed compensatory damages of $49,352.54 and additional attorney's fees in the same amount.  An Amended Order was entered on June 17, 2011that reduced the additional attorney's fees to $6,500.00. Pl.'s Mot. Summ. J., Ex. K.

[7] On June 28, 2013, an Amended Scheduling Order (Scheduling Order) was entered which in part scheduled a new trial date of October 1, 2013. The parties diligently adhered to the deadlines set forth in the Scheduling Order by, among other things, timely filing their pre-trial submissions. The Court regrets its failure to expressly call off the pre-trial deadlines and apologizes for that lapse.

proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §1409(a).

V.     Analysis

    A.     **Summary Judgment Standard**

Fed. R. Civ. P. 56(c), made applicable by Fed. R Bankr. P. 7056, sets forth the procedure to be followed when a party files a motion for summary judgment. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit. *Id.* at 248. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed. R. Civ. P. 56(e). Permissible inferences to be drawn from the underlying facts are viewed in the light most favorable to the nonmoving party, but if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment may be granted. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir. 1990).

The material facts, from the parties execution of the Agreement to the entry of the Recorded Judgment, are not in dispute and Section 523(a)(15) provides the governing law. Nevertheless the Defendant contends, as he did in his Answer filed in the State Court Case, that the Agreement cannot be enforced against him because the damages sought by the Binner Complaint arose after the Property had been "sold and settled" and fall outside the scope of his

8

duty to indemnify. Were it not for the resolution of the State Court Case, the mixed question of fact and law proffered by the Defendant might well have been a fit candidate for adjudication. But because his defense is barred by the doctrine of issue preclusion, the question is insulated from review.

### B. The Merits

Section 523(a)(15) excepts from the discharge of any individual debtor debts owed, "to a…former spouse…of the debtor and not of the kind described in paragraph (5)…incurred by the debtor…in connection with a separation agreement…(or) divorce decree…". In order for the debt in this case to be declared nondischargeable under Section 523(a)(15), three elements must therefore be satisfied by Ms. Reed: 1) Ms. Reed must prove she is the Debtor's former spouse, 2) the debt memorialized by the Recorded Judgment must not fall within the ambit of Section 523(a)(5) (a domestic support obligation) and 3) the debt must have been incurred in connection with the Agreement or the divorce decree. Ms. Reed has the burden of proving Section 523(a)(15)'s applicability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 292 (1991); *In re Dexter*, 250 B.R. 222, 224 (Bankr. D. Md. 2000) (citing *Matter of Gamble*, 143 F.3d 223, 226 (5th Cir. 1998)).

The first element is indisputably satisfied, since Ms. Reed is the Debtor's ex-spouse. As for the second element, the Debtor does not assert that the debt is a domestic support obligation. Nevertheless, a brief inquiry would be prudent. Section 523(a)(5) excepts domestic support obligations – a defined term under the Code – from an individual discharge. The primary characteristic that distinguishes a domestic support obligation from an obligation arising from a separation agreement, is that a domestic support obligation must be founded upon an "alimony, maintenance or support obligation." Section 101(14A)(B). The intention of the parties

determines the nature of the obligation. *Matter of Long,* 794 F.2d 928, 931 (4th Cir. 1986); *Tilley v. Jessee*, 789 F.2d 1074, 1077-1078 (4th Cir. 1986). Relying upon the Agreement to determine the parties' intent, Ms. Reed's Summary Judgment Motion puts it neatly:

> Here, the parties discharged one another from any claim of alimony or support subsequent to the sale of the [Property] and resulting property settlement. See Exhibit C, at ¶ 3(b). As a result, the matter at issue in [Ms. Reed's] underlying judgment against the [Debtor] was not the type of alimony or support obligations described in [Section 523(a)(5)], but rather the proper division of the couples' assets and liabilities under the [Agreement].

The parties' intentions are also confirmed by how the Agreement operates, at least insofar as the treatment of the Property (and any lingering obligations) are concerned. The Agreement requires the sale of the Property and also states how the proceeds and liabilities are to be divided. Mr. Reed's indemnification responsibilities arise from those clauses and thus the debt owed to Ms. Reed is not a domestic support obligation subject to Section 523(a)(5).

The final question under Section 523(a)(15) ─ whether the debt was incurred in connection with the Agreement ─ is the one that the Debtor seeks to contest. However, the Reeds squared off on that precise issue in the state court: whether the Agreement required indemnification for any damages and attorney's fees paid by Ms. Reed as a result of the Binner Complaint and judgment was entered against Mr. Reed. Nevertheless, he contends that (a) the Dischargeability Complaint's allegations are insufficient to state a claim under his suggested interpretation of the Agreement's indemnification clause and (b) his failure to respond to the State Court SJ Motion should afford him a second opportunity to litigate the question he previously raised but failed to effectively pursue.

Mr. Reed's Motion to Dismiss is grounded upon the contention that because "all the events for which the plaintiff demands an indemnity happened after the property was 'sold and

10

settled'," they are, "beyond the scope of the parties underlying separation agreement" and therefore the Dischargeability Complaint is insufficient on its face. The Defendant's Opposition expands upon that argument. The Debtor's Opposition to the Plaintiff's Supplemental Summary Judgement (sic) Pleading Asserting Res Judicata (Supplemental Opposition) addresses the question of issue preclusion head on.

Issue preclusion, historically known as collateral estoppel, bars relitigation of issues previously tried and resolved. *Hagan v McNallen (In re McNallen),* 62 F.3d 619, 624 (4th Cir. 1995); *Nestorio v. Associates Commercial Corporation,* 250 B.R. 50, 55 (D. Md. 2000); *In re Bernstein*, 197 B.R. 475, 480 (Bankr. D. Md. 1996). "Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *McNallen*, 62 F.3d at 624. Issue preclusion can be applied in a dischargeability adversary proceeding. *Grogan*, 498 U.S. at 284. When a party attempts to assert that a state court judgment carries preclusive effect, "the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Jordan v. Moore (In re Jordan)*, Case No. WMN-09-CV-2882, 2010 WL 997065, slip op. (D. Md. March 16, 2010) (citing *In re McNallen*, 62 F.3d at 624). Thus, in order to prevail on summary judgment, Ms. Reed must establish that: (1) the issues presented by the Dischargeability Complaint are identical to those raised in the prior adjudication; (2) the issues actually litigated were essential to the judgment in the prior adjudication; (3) a final judgment on the merits was entered in the prior litigation; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Brown & Sturm v. Frederick Road Ltd. Partnership*, 137

Md. App. 150, 192, 768 A.2d 62 (2001), *see also In re McClendon*, 415 B.R. 170, 180-184 (Bankr. D. Md. 2009).[8]

The answers to points one, three and four are self-evident. The question presented by the Cross-Claim was whether under the Agreement, Mr. Reed had to indemnify Ms. Reed for the sums she paid the Binners and her attorney's fees. If the other elements of Section 523(a)(15) are satisfied, then the debt arising from the duty to indemnify must be excepted from Mr. Reed's discharge. Likewise, there is no question that the Recorded Judgment memorializes a final, fully enforceable judgment and, moreover, that Mr. Reed was a party to the State Court Case.

However, the Supplemental Opposition asserts that the question of indemnification liability was not actually litigated and that the second element cannot be satisfied, because (a) the only 'finding' made was that the Debtor "failed to plead", (b) there was no indication that the claim was "heard and considered by a jury", (c) there was no indication that a "hearing was held and evidence introduced" and (d) the state court made no findings "to use" for an issue preclusion analysis. These points ignore the settled principle that full blown adversarial combat – a trial – is not always necessary to support a finding that an essential issue was 'actually litigated'. What *is* important is whether the party against whom the findings are asserted was afforded fundamental due process – notice, an opportunity to be heard and motivation to protect one's rights – before the finding was made.

*Nestorio* presents a perfect example of the actual litigation of an issue notwithstanding the defendant's default and failure to participate in the prior litigation's last significant hearing. The plaintiff lienholder sued the defendant for the wrongful conversion of heavy construction equipment subject to its lien. The defendant first went into default but a motion to set aside the

---

[8] Summary judgment is a final adjudication on the merits. *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1181 (4th Cir. 1989); *Brader v. Wolfe*, Case No. DKC-13-587, 2013 WL 3358817, *2, Slip Op. (D. Md. July 3, 2013).

default, filed with his answer, was granted on the condition that a bond be posted. The defendant never posted the bond and the default was left in place. A hearing on damages before a magistrate judge was commenced with the defendant and counsel in attendance but it was continued to permit supplemental briefing. The defendant filed a voluntary petition in bankruptcy before the hearing could be resumed. The respite was short lived though, as the bankruptcy court lifted the automatic stay to allow the damages hearing to run its course. The defendant did not appear for the continued damages hearing. After the damages were determined, the bankruptcy court concluded that the debtor was precluded from re-litigating the plaintiff's exception to discharge claim under Section 523(a)(6) by the district court's decision and entered a partial summary judgment excepting the debt on that basis.

The debtor appealed and claimed that (1) because the prior district court judgment was premised upon his default and (2) he was unable to "cross-examine witnesses and offer evidence in [his] defense…" at the final damages hearing, the bankruptcy court erred by entering summary judgment. *Nestorio,* 250 B.R. at 55. The District Court recognized that default judgments do not normally carry preclusive effect. However, the Court went on to state that

> This case, however, does not involve the typical default case where the defendant fails to answer or appear and judgment is entered in favor of plaintiff. Here, Defendant was an active participant in the litigation for some time prior to his decision not to appear for the conclusion of the damages hearing.
>
> Most courts hold that the "actually litigated" requirement is met, even if there is no adversarial hearing, when (1) a defendant files an answer to the complaint or otherwise appears in the action, (2) the issues are submitted to a jury or finder or fact, (3) the issues are determined after the party had notice and an opportunity to be heard, and (4) the defendant had proper incentive to litigate the matter in the prior hearing and could reasonably foresee litigation on the same issue.

*Id.* at 55-56.

This Court's decision in *Bernstein* is to the same effect:

> Once an issue has been properly framed and put at issue in prior litigation, issue preclusion is applicable even if the litigation was one-sided. In such circumstances, there is an expectation by the parties that the issue will be decided, and the subsequent court is not in a position to evaluate a party's litigation strategy in another case. Further, it would be unfair to permit a party to avoid the preclusive effect of an anticipated adverse decision merely by not appearing for trial or by not having a factual defense to present.

*Bernstein*, 197 B.R. at 480.

Both decisions provide imminently sound reasoning directly applicable to the case at hand. The Debtor filed a response to both the Binner Complaint and the Cross-Claim. As to the Cross-Claim, he even extricated himself from default to file his Answer and raise precisely the same issue he raises now – whether Ms. Reed's claim for indemnity is nullified by the opening phrase of the Agreement's relevant paragraph. Once his Answer was filed, and Ms. Reed's damages were quantified by the settlement, Ms. Reed proceeded diligently by seeking resolution of the question presented through the State Court SJ Motion. The Debtor does not contend that he was either unaware of the State Court SJ Motion or that he was deprived of an opportunity to respond to it. He certainly had enough incentive to do so and he had already explained the basis for his disagreement with Ms. Reed's position in the Answer. The Debtor had more than a vague expectation that the crucial issue would be raised; he raised it himself. To the extent the State Court Case became a one-sided contest, the fault for the imbalance falls squarely on the Debtor's shoulders. He could have continued to press his argument and seek to insulate his basic duty to indemnify from the facts raised in the Binner Complaint through the filing of a response to the State Court SJ Motion, but for whatever reason, he decided not to do so. When appropriate, as in this 'second act' of a case, summary judgment is a valid substitute for trial and the fact issues necessarily adjudicated may be used for their preclusive effect. Accordingly, the Court concludes

that the second element of the test for issue preclusion – whether the issues were actually litigated and were essential to the judgment – is resolved in Ms. Reed's favor.  Hence, accepting the effect of the Judgment Order, the Court must find that the Debtor had a duty under the Agreement to indemnify Ms. Reed on the basis of her settlement of the Binner Complaint.[9]  With that, Section 523(a)(15) is satisfied.

## VI. <u>Conclusion</u>

In conclusion, the entire debt memorialized in the Recorded Judgment shall be excepted from the Debtor' discharge. A separate Order shall be entered.

cc:    Steven Kenneth Reed, *Debtor-Defendant*
       19313 Middletown Rd.
       Parkton, MD 21120

       Raymond E. Dibiagio, Jr., *Counsel for Debtor-Defendant*
       7433 Baltimore Annapolis Blvd.
       Glen Burnie, MD 21061

       Deborah A. Reed, *Plaintiff*
       216 Southwood Road
       Pasadena, MD 21122

       Nevin Tucker Meneely, *Counsel for Plaintiff*
       Council Baradel Kosmerl & Nolan P.A.
       125 West Street, Fourth Floor
       P.O. Box 2289
       Annapolis, MD 21404

**End of Order**

---

[9] Mr. Reed also relied upon *In re Raynor,* 922 F.2d 1146 (4th Cir. 1991). In *Raynor*, the debtor was sued on the basis of fraud.  He hired an attorney who neither entered a 'formal' appearance nor filed an answer.  Just before trial, the attorney called the debtor twice on the telephone.  Because no one answered, the attorney did not leave a message. On the day of trial, the attorney was allowed by the court to withdraw.  The court found the debtor liable for fraud after an uncontested, evidentiary hearing.  Debtor hired new counsel, who sought relief from the judgment but his motion was denied.  After the debtor filed bankruptcy, the judgment creditor was granted summary judgment and the debt was excepted from the debtor's discharge. The Fourth Circuit reversed the grant of summary judgment, finding that the crucial issue – whether the debtor had committed fraud – had not been actually litigated, notwithstanding the uncontested hearing.  *Raynor* is readily distinguishable from this case. In *Raynor*, the debtor did not file an answer in the state court, had no knowledge of the trial and was not present in court when it happened. The facts are the opposite here with respect to Mr. Reed and he even joined issue with Ms. Reed in the prior litigation on the crucial point that he now seeks to assert.